IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Jeremy Slaughter, | ) | Civil Action No.  8:14-cv-04760-BHH-JDA |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On January 13, 2011, Plaintiff protectively filed applications for DIB and SSI alleging an onset of disability date of November 26, 2009.  [R. 142–49, 132–41.]  These claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R. 65–72, 76–79.]  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and on April 1, 2013, ALJ Wendell M. Sims conducted a de novo hearing on Plaintiff's claims.  [R. 26–56.]

The ALJ issued a decision on April 18, 2013, finding Plaintiff not disabled under the Social Security Act ("the Act") and not eligible for SSI benefits. [R. 12–21.] At Step 1,[1] the ALJ found Plaintiff met the insured status requirements of the Act on November 26, 2009, the alleged date of disability onset, and continued to meet them through the date of the decision. [R. 20, Finding 1.] The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [R. 20, Finding 2.] At Step 2, the ALJ found that the medical evidence established that Plaintiff had "severe" impairments of degenerative disc disease, osteoarthritis of his knees, major depression, and general anxiety. [R. 20, Finding 3.] The ALJ also noted that Plaintiff had non-severe impairments of discrete schizophrenia, borderline personality disorder, residuals of a right foot injury, poor hearing in one ear, and poor vision in his right eye. [R. 15.] At Step 3, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. [R. 14; R. 20, Finding 5.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> Having carefully reviewed all of the evidence in this case, I find that the claimant retains the residual functional capacity to perform "light" work requiring completion of only simple, routine, repetitive tasks with only occasional public contact, as well as only occasional stooping, kneeling, and climbing of ladders, ropes or scaffolds. I find that the claimant has not met his burden of establishing that he is unable to perform other work functions, including standing, sitting, or walking for 6 to 8 hours in a work day, frequently lifting and carrying as much as

---

[1]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> 10 pounds, occasionally lifting and carrying as much as 20 pounds, pushing, pulling, meeting the other physical non-exertional demands of work, and meeting the mental demands of unskilled work, including performing the simple, routine, repetitive tasks associated with such work.

[R. 18; R. 20 Finding 7.] Based on this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work. [R. 21, Finding 8.] Taking into consideration Plaintiff's age, education, and work experience, the ALJ determined that, although the claimant is unable to perform the full range of "light" work, he is capable of making the adjustment to work which exists in significant numbers in the national economy including employment as a small parts assembler, bench assembly, an assembler machine tender, and a night business cleaner. [R. 21, Finding 11.] The ALJ concluded that Plaintiff was not under a disability within the meaning of the Act at any time through the date of the decision. [R. 21, Finding 12.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on September 8, 2014, the Council declined review.[2] [R. 1–8.] Plaintiff filed this action for judicial review on November 20, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff does not allege any specific error in the ALJ's analysis but argues that his claim should have been granted at the initial level based on the "overwhelming evidence of physical and mental disability as seen in the medical records provided." [Doc. 20.] Plaintiff contends that he "has suffered several years of back and joint pain, along with psychiatric impairments that are not expected to improve to a point of allowing" him to

---

[2]The Appeals Council received a representative's brief dated July 31, 2013, into evidence; nothing else was submitted.

become employable. [*Id.* at 2.] Plaintiff argues the medical evidence of record supports a finding that Listings 1.02, 1.04,12.04, and 12.06 are met because the evidence showed joint space narrowing in the knees and lumbar spinal stenosis and nerve root canal compression; Plaintiff also argues that Plaintiff's mental impairments satisfy "the grid for mood disorders and anxiety disorders." [*Id*. at 3.] Plaintiff contends that several physicians and psychiatric physicians have stated that Plaintiff is disabled and cannot work. [*Id*.] Plaintiff also points out that his VA disability rating has been changed from 50% to 80% during the course of this disability claim due to his deteriorating knees and back; and, during the week of August 17, 2015, Plaintiff had surgery to correct his pinched spinal nerves. [*Id*. at 1.]

The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff is not entitled to benefits and the decision should be affirmed. [Doc. 21.] The Commissioner explains that Plaintiff's primary arguments reference certain evidence that was not presented to the ALJ and is not before this Court or made part of the record. [*Id*. at 1, 11.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368

F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence.  *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).  To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176,

1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").  After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.  *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d

26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).    The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.    20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.    *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).    The claimant must prove disability on or before the last day of her insured status to receive disability benefits.    *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).    If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.    *Grant*, 699 F.2d at 191.    If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.    20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined

10

impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.     *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[4]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.     *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

**E.     *Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could

---

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national

---

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II. Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III. Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but

13

the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d).

However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

15

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

16

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such

17

determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Substantial Evidence Review**

In general, the Court construes that Plaintiff contends substantial evidence does not support the ALJ's decision.  From Plaintiff's brief, the Court gleans the following specific objections to the ALJ's decision. [*See* Doc. 20.]  Plaintiff contends his claim should have been granted at the initial level due to his back and joint pain, along with his psychiatric impairments, which are not expected to improve to a point to allow Plaintiff to become employable. [*Id*.] The Plaintiff explains that he exhibits signs of dysfunction of his major joints and has been informed that he will probably need another corrective knee surgery soon.  [*Id*.] Plaintiff also points out that he exhibits signs of degenerative disc disease by his recent spinal surgery to insert rods into his lumbar and sacral spine and his inability to bear weight and inability to perform previous work. [*Id*.]  Plaintiff reports that he takes prescribed narcotics daily for chronic pain and mood altering psychiatric medications that bring into question safety outside his home because of their sedating effects. [*Id*.] Additionally, Plaintiff relies on an alleged letter by Dr. John T. Wheeler ("Dr. Wheeler")—which is not in the record—indicating that Plaintiff cannot obtain or maintain

suitable gainful employment now or in the foreseeable future. [*Id*.]  Plaintiff argues the "RFC . . . on record with the Social Security medical consultant was considered" by the ALJ even though the consultant never performed any tests assessing Plaintiff's physical limitations and Plaintiff wore long pants that concealed his knee braces during his "RFC" with the consultant.  [*Id*.] And, the consultant did not ask about Plaintiff's knee braces; thus, based on those problems, he argues that the RFC examination was not thorough. [*Id*.] Plaintiff further contends that because the ALJ considered Plaintiff's conditions of degenerative disc disease, bilateral knee osteoarthritis, major depression, and general anxiety to be "severe," then the ALJ should have determined that Plaintiff was unable to lift 50 pounds, climb ladders, crouch, stoop, or crawl as stated in the RFC. [*Id*.]

The Commissioner contends that substantial evidence supports the ALJ decision. [*See* Doc. 21.]  And, this Court should not consider alleged evidence that is not part of the record.  [*Id*.]  Further, if Plaintiff could produce the alleged evidence and make it part of the record, the Commissioner argues that Plaintiff's only recourse is to seek a sentence six remand but he has not alleged that the sentence six factors are met. [*Id*.]

The Court agrees with the Commissioner that substantial evidence supports the ALJ's decision, and Plaintiff has not explained why a sentence six remand would be appropriate.

### *Pertinent Medical History*

An MRI of Plaintiff's lumbar spine made on May 28, 2008, showed degenerative disc dessication at the L5-S1 level; grade I anterior spondylolisthesis of the L5 upon S1 due to spondylolysis at the L5 vertebra; and mild stenosis at the intervertebral nerve root canals

bilaterally at the L3-4 through L5-S1 levels. [R. 499.] Results also showed a small posterior annular tear at L5-S1; annular bulging minimally compressed the anterior surface of the thecal sac at the L5-S1 and the L1-2 levels; and the conus and visualized thoracic spinal cord were normal in appearance. [*Id*.] An MRI of Plaintiff's lumbar spine dated April 14, 2010, showed anterior listhesis of L5; vertebrae and disc spaces of normal height; no cord or marrow signal abnormality; and no paraspinal soft tissue abnormality. [R. 494–95.]

On March 25, 2010, Plaintiff underwent a diagnostic imaging of his knees which showed no joint space narrowing, and mild suprapatellar inflammation and effusion. [R. 495–96.] Plaintiff was assessed with bilateral bursitis. [R. 496.] On the same day, imaging of the cervical spine showed visible vertebrae and disc spaces of normal height; anatomic alignment; mild torticollis; and straightening of the spine compatible with spasm. [R. 497.] Imaging of the thoracic spine showed mild scoliosis; vertebrae and disc spaces of normal height; and probable Schmorl's nodes inferior aspect of T11, T10, and T9. [R. 498.]

On January 25, 2011, an MRI of Plaintiff's neck and spine, without contrasts, was conducted to study Plaintiff's mid back and neck pain. [R. 492.] Sagittal and axial images showed very minimal encroachment upon the anterior aspect of the central canal due to annular bulging at the C5-6 and C6-7 levels; this encroachment does not compress the cervical spinal cord. [R. 493.] An MRI of the thorasic spine on the same day showed a mild degree of thoracic kyphosis; degenerative disk disease at several levels, most severe at T5-6; and small disk protrusion encroaching the right anterolateral aspect of the central canal at the T5-6 level without spinal cord compression. [R. 493–94.] Signal intensity through the cervical spinal cord was normal. [R. 494.]

On February 6, 2012, an exam of Plaintiff's bilateral knee was done to study his pain. [R. 491–92.] On the right side, there was minimal narrowing of the medial femoral tibial joint space compartments bilaterally without significant change; suggestion of minimal suprapatellar effusion; and no significant change in a few small sclerotic foci in the distal femurs bilaterally suggesting benign bone islands. [R. 492.] On the left side, there was suggestion of a minimal suprapatellar effusion; and no acute fracture or dislocation in either knee. [*Id*.]

On July 25, 2012, Plaintiff underwent an MRI of the lumbar spine to reassess his complaints of lower back pain ("LBP") with radiation into the buttocks. [R. 491.] The MRI scan showed mild increase in the degree of compression on the anterior surface of the thecal sac at the L5-S1 level due to annular bulging or a broad-based disk protrusion since the previous MRI scan on April 14, 2010. [*Id*.] The scan also showed degenerative stenosis involving the intervertebral nerve root canals at the L3-4 through the L5-S1 levels bilaterally. [*Id*.]

On March 22, 2011, a Physical RFC Assessment was completed by Dr. Ted Roper ("Dr. Roper") finding Plaintiff capable of occasionally lifting/carrying 50 pounds; frequently lifting/carrying 25 pounds; standing/walking/sitting 6 hours in an 8-hour workday; and unlimited pushing/pulling except as shown for lifting/carrying. [R. 364–71.] Dr. Roper considered several reports including Plaintiff's March 2010 bilateral knee x-rays, April 2010 MRI, and January 2011 assessment regarding his knee pain. [R. 365.] Dr. Roper also found Plaintiff could frequently climb ramps/stairs, balance, crouch and crawl; but could only occasionally climb ladders/ropes/scaffolds, stoop and kneel. [R. 366.] Dr. Roper noted no manipulative, visual, communicative, or environmental limitations. [R. 367–68.]

21

On June 8, 2011, Plaintiff underwent a Mental Status Evaluation by licensed psychologist Dr. Stephanie Boyd ("Dr. Boyd"). [R. 373–76.] Dr. Boyd noted that Plaintiff's chief complaint included allegations of bi-polar, schizophrenia, and borderline personality disorder. [R. 373.] The evaluation noted that Plaintiff dislikes being in public, did not remember when he was diagnosed with his psychiatric conditions, and was having significant marital difficulties. [*Id*.] His marital difficulties resulted in him being "kept for 15 days" in the VA medical center. [*Id*.] Plaintiff reported seeing psychiatrists since he was nine years old. [*Id*.] Plaintiff reported "extreme paranoia" and lack of trust of others. [R. 373–74.] Plaintiff reported being worried about money and wanting to work, but working around people and dealing with authority figures does not end well for him. [*Id*.]

Dr. Boyd noted that Plaintiff completed school through adult education and earned his GED after having a lot of conflicts with teachers and students in school. [R. 374.] Plaintiff reported being discharged from the Guard due to his knee injury and last worked in November 2009 at a construction company that built Lowes stores. [*Id*.] Plaintiff reported being laid off after working this job for ten years due to conflicts with supervisors. [*Id*.] He also tried working in fast food, but he would get fired. [*Id*.] Plaintiff also reported being arrested for distribution of drugs and was worried about his ability to maintain child support if he ended up in jail. [*Id*.]

Plaintiff reported living with his fiancee and having a good relationship with his son although his son's hyperactivity stresses him out. [R. 375.] Plaintiff described his typical day as cleaning around the house and walking the dog; performing hygiene activities independently; and cooking for the home. [*Id*.] Plaintiff reported losing his drivers license

due to suspension; avoiding handling money because he will lose it; and messing up his checking accounts so his fiancee kept up with his money, appointments, and medications. [*Id*.]

Dr. Boyd noted that Plaintiff was psychologically agitated, sweated a lot in the palms of his hands, was anxious and stayed intense but related better as the session progressed. [*Id*.] On mental status exam, Dr. Boyd noted Plaintiff demonstrated appropriate orientation to present time, situation, and place; was able to repeat three words and recalled two of the three after a brief distraction; was not able to count down by serial 7s, but spelled the word "world" backwards on his second attempt, suggesting some impairment in his ability to maintain attention and concentration. [*Id*.] Dr. Boyd diagnosed Plaintiff with PTSD (provisional), Generalized Anxiety Disorder (by history), Major Depressive Disorder–recurrent moderate (by history), and gave him a GAF score of 50. [*Id*.]

In summary, Dr. Boyd noted that Plaintiff experienced psychiatric symptoms consistent with PTSD and his occupational functioning had been impacted by poor interpersonal functioning and medical conditions.[7] [R. 376.] Dr. Boyd noted that Plaintiff was being treated pharmacologically for his symptoms, but that he "remains significantly symptomatic . . . demonstrated mild to moderate cognitive interference with his attention and concentration span." [*Id*.] Dr. Boyd opined Plaintiff had the ability to manage at least simple, repetitive tasks related to his concentration, attention and intellectual level, but his psychiatric symptoms may interfere with the reliability of his functioning. [*Id*.] Dr. Boyd also

---

[7]The ALJ gave Dr. Boyd's opinion that Plaintiff would be of questionable reliability at work, had marginal ability to interact appropriately, and GAF assessment little or less weight. [R. 17.] It appears to this Court Plaintiff has not challenged this ruling.

noted that Plaintiff was able to manage his ADLs with difficulty due to his medical condition and was marginally able to interact appropriately with her. [*Id*.] Plaintiff would require assistance with the management of funds if awarded. [*Id*.]

A Psychiatric Review Technique ("PRT"), assessing the period of time between November 26, 2009, and July 21, 2011, completed by Dr. Robbie Ronin ("Dr. Ronin"), considered Plaintiff's impairments in accordance with Listings 12.04, 12.06, and 12.09; he found those listings were not met. [R. 380–93.] Dr. Ronin found Plaintiff's restrictions of activities of daily living were mild; difficulties in maintaining social functioning and concentration, persistence, and pace were moderate; and no episodes of decompensation of extended duration. [R. 390.]

Dr. Ronin also completed a mental RFC assessment for Plaintiff finding him limited as follows:

*Not significantly limited in his ability to*:

1.  Remember locations and work-like procedures
2.  Understand and remember very short and simple instructions
3.  Carry out very short and simple instructions
4.  Maintain attention and concentration for extended periods
5.  Perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
6.  Sustain an ordinary routine without special supervision
7.  Work in coordination with or proximity to others without being distracted by them
8.  Make simple work-related decisions
9.  Complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
10  Ask simple questions or request assistance
11  Accept instructions and respond appropriately to criticism from supervisors
12.  Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
13.  Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness

14.    Respond appropriately to changes in work setting
15.    Be aware of normal hazards and take appropriate precautions
16.    Travel in unfamiliar places or use public transportation
17.    Set realistic goals or make plans independently of others

*Moderately limited in his ability to:*

1.    Understand and remember detailed instructions
2.    Carry out detailed instructions
3.    Interact appropriately with the general public

[R. 394–97.]

Dr. Ronin noted that Plaintiff's

> allegations of schizophrenia, 'split personality', and BPAD are
> not credible given the VA notes and the psych CE.  Dr. Boyd
> reports the claimant's work ability is impacted by psych
> condition but doesn't say how much, and the comment is not
> really a source statement, and judgment reserved for the
> commis in any case, and not supported by claimant's fxing.

[R. 396.]  Dr. Ronin found Plaintiff's allegations of impairments partially credible but not as

pronounced as Plaintiff indicated.  [*Id*.] And, Dr. Ronin found the "preponderance of the

evidence indicates the claimant's impairments are severe but would not preclude the

performance of simple, repetitive, routine tasks; or preclude the ability to interact

appropriately with co-workers or supervisors."  [*Id.*]

A Psychiatric Review Technique ("PRT") performed on September 23, 2011, by Dr.

Larry Clanton ("Dr. Clanton"), evaluated Plaintiff's impairments under Listings 12.04, 12.06,

and 12.09; he found those listings were not met.  [R. 460.]  Dr. Clanton found Plaintiff had

mild restrictions in his activities of daily living; moderate difficulties in maintaining social

functioning and concentration, persistence, and pace; and no episodes of decompensation

of extended duration.  [R. 470.]  Dr. Clanton cited the Psych CE noting that it "doesn't say

how much (his work functioning was impacted), so not really a source statement, and

25

judgement reserved for the comis in any case." [R. 472.] Dr. Clanton's findings appear to mimic the findings of the previous PRT completed by Dr. Ronin. [*Compare* R. 472 and R. 392.]

A Mental RFC performed by Dr. Clanton, also on September 23, 2011, found Plaintiff limited as follows:

*Not significantly limited in his ability to*:

1.  Remember locations and work-like procedures
2.  Understand and remember very short and simple instructions
3.  Carry out very short and simple instructions
4.  Maintain attention and concentration for extended periods
5.  Perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
6.  Sustain an ordinary routine without special supervision
7.  Work in coordination with or proximity to others without being distracted by them
8.  Make simple work-related decisions
9.  Complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
10.  Ask simple questions or request assistance
11.  Accept instructions and respond appropriately to criticism from supervisors
12.  Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
13.  Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness
14.  Respond appropriately to changes in work setting
15.  Be aware of normal hazards and take appropriate precautions
16.  Travel in unfamiliar places or use public transportation
17.  Set realistic goals or make plans independently of others

*Moderately limited in his ability to:*

1.  Understand and remember detailed instructions
2.  Carry out detailed instructions
3.  Interact appropriately with the general public

[R. 482–84.]  Dr. Clanton's findings and conclusions, again, mimic those of Dr. Ronin almost verbatim. [*Compare* R. 396 and R. 484.]

In a Physical RFC Assessment completed by Dr. Carl Anderson ("Dr. Anderson") on September 23, 2011, Dr. Anderson found Plaintiff capable of occasionally lifting/carrying 50 pounds; frequently lifting/carrying 25 pounds; standing/walking/sitting 6 hours in an 8 hour workday; and pushing/pulling in unlimited manner other than shown for lifting/carrying. [R. 474–81.]  Dr. Anderson listed the evidence supporting his findings to include: March 2010 knee x-rays; April 2010 MRI of the back; January 2011 assessment of knee pain; January 2011 MRI of the C spine and T Spine showing annular bulging at C5-6 and C6-7, a mild degree of throacic kyphosis, and DDD at several levels most severe at T5-6; May 2011 PT note indicating multilevel spondylosis; and August 2011 note indicating Plaintiff still using knee brace but still popping and painful and low back pain.  [R. 475–76.]  Dr. Anderson found that Plaintiff could frequently climb ramps/stairs, balance, crouch and crawl, but could only occasionally climb ladders/ropes/scaffolds, stoop or kneel.  [*Id*.]  Dr. Anderson noted no manipulative, visual, communicative, or environment limitations.  [R. 477–78.]

### *Discussion*

For a claimant to establish eligibility for DIB, he must demonstrate two essential elements: (1) a disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d) (1)(A); and (2) a disability at the time the claimant has disability insurance status, *Id*. § 423(a)(1)(A); 20 C.F.R. § 404.131(a).  Thus, a claimant must establish the presence of a disability prior to the last day of his disability insurance status.  *Johnson v. Barnhart*, 434 F.3d 650, 655–56 (4th Cir. 2005).  Plaintiff bears the

27

burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability. See 20 C.F.R. §§ 404.1512(a) & (c), 416.912(a) & (c); 42 U.S.C. § 423(d)(5)(A).

Although the claimant for DIB must establish the presence of a disability prior to his last date insured, medical evidence produced after the date last insured is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-[date last insured] condition." *Bird*, 699 F.3d at 341. Indeed, in *Bird*, the Fourth Circuit noted that often the "most cogent proof" of a claimant's pre-date last insured disability comes from retrospective consideration of subsequent medical records. *Id*. (*citing Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). The *Bird* decision further provides that the subsequent medical evidence need not include a retrospective diagnosis so long as the treatment related to the claimant's "history of impairments." *Id*. Additionally, the *Bird* decision held that such retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about his pre-date last insured condition. *Id.* at 342.

As explained above, a reviewing court may remand a case to the Commissioner on the basis of new evidence pursuant to sentence six only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court.

28

Upon review of the ALJ's decision, the evidence of record before the Court, and Plaintiff's arguments outlined above, the Court finds no basis to reverse or remand the ALJ's decision.  As an initial matter, Plaintiff fails to point the Court to any alleged error in the ALJ's analysis that would require a remand.  Contrary to Plaintiff's contention, the ALJ found Plaintiff's impairments of degenerative disc disease, osteoarthritis of his knees, major depression, and general anxiety to all be "severe" impairments and expressly considered these impairments in determining Plaintiff's RFC.  The fact that an impairment is designated as severe at Step 2, however, does not equate to a finding of disability.  At Step 2, the ALJ has the responsibility to determine which impairments a plaintiff has and whether the impairments are severe or non-severe; then, the ALJ proceeds to the next steps in the sequential questions.  *See, e.g., Solesbee v. Astrue*, C/A No. 2:10-1882-RMG, 2011 WL 5101531, at *4–5 (D.S.C. Oct. 25, 2011) (after a severe impairment is found, the ALJ must assess the impact of it at each subsequent step of the disability evaluation process).  Thus, Plaintiff's argument that if the ALJ had properly found certain "severe" impairments, he would have determined that Plaintiff was unable to lift 50 pounds,[8] climb ladders, crouch, stoop, or crawl is simply not supported by the applicable law or record.

The Administration considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence of a severe impairment shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled at

---

[8]Regardless, as explained above, the ALJ determined in the RFC that Plaintiff could frequently lift and carry as much as 10 pounds, occasionally lift and carry as much as 20 pounds.

Step 3 without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

Plaintiff argues the medical evidence of record supported a finding that Listings 1.02, 1.04, 12.04, and 12.06 were met, citing Exhibit 13F, in that the evidence shows joint space narrowing in the knees and lumbar spinal stenosis and nerve root canal compression. Plaintiff, however, fails to direct the Court to evidence of record showing that all of the elements of these listings were satisfied. For instance, Listing 1.02 requires a showing of an inability to ambulate or an inability to perform fine and gross movements; and Listing 1.04A requires evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and, if the lower back is involved, positive straight leg raises. Plaintiff does not direct the Court to evidence of record showing an inability to ambulate or perform fine and gross movements; nor does Plaintiff point to evidence of record showing any motor, sensory or reflex loss. Furthermore, the ALJ evaluated Plaintiff under Listings 12.04 and 12.06, and Plaintiff fails to challenge these findings or direct the Court to evidence indicating Plaintiff has greater than mild restrictions in activities of daily living, moderate limitations in social functioning or in concentration, persistence, or pace, or has had episodes of decompensation for an extended period of time.

Additionally, the fact that a non-examining physician did not expressly ask Plaintiff about his wearing a knee brace does not rise to the level of reversible error where the fact that Plaintiff wore a knee brace was noted in the medical evidence considered.  And, there was no opinion by any treating physician, including the physician prescribing the knee brace, indicating Plaintiff could not perform any of the functions outlined in the RFC.  *See* 20 C.F.R. § 404.1527(d)(2)(the opinion of a non-treating physician is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.").  Further, the Court notes that the non-examining physician to whom Plaintiff makes reference expressly noted that Plaintiff was assessed on January 24, 2011, for knee pain and was to "get [a] knee brace" for his left knee.  [R. 365.]  Plaintiff's right knee was described as "stable" and his gait normal.  [*See* R. 475.]  And, the ALJ's decision indicates that the ALJ understood that Plaintiff wore a knee brace.  [R. 14.]  Thus, the Court finds no merit in Plaintiff's allegation of error.

Lastly, Plaintiff relies on alleged evidence of additional surgeries, medical opinions, and an increased VA disability rating from 50% to 80%, none of which were made a part of the record before the ALJ, the Appeals Council, or this Court.[9]  Under the law, a claimant is permitted to offer relevant evidence to support his disability claim throughout the administrative process; and even after the ALJ renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision.

---

[9]The ALJ relied on and gave great weight to the VA disability rating of 50% and determined that Plaintiff could still perform certain light work. [R. 18–19.]

20 C.F.R. § 404.968, 404.970(b). If the Appeals Council had the new evidence before it, it would be a part of the record to be considered by this Court. *See Bird*, 699 F.3d 337, 342 n. 4. Also, if a plaintiff submits new evidence to a district court, and certain factors are met, a remand to the Commissioner for consideration of the new evidence may be appropriate in certain circumstances. *See Bird*, 699 F.3d 337, 345 n. 6.

Here, it appears Plaintiff has not sought to make the alleged new evidence part of the record, and under the circumstances, a remand is not appropriate. Plaintiff does not appear to have offered evidence related to Plaintiff's additional surgeries or Dr. Wheeler's letter to either the ALJ or the Appeals Council. Social Security regulations require the ALJ to consider all of the medical opinions in a claimant's case record, as well as the rest of the relevant evidence. 20 C.F.R. § 404.1527(c). The Court cannot find error in the ALJ's failure to consider evidence not before him.

Moreover, because Plaintiff did not submit the new evidence to this Court, there is no general showing of the nature of the new evidence. In other words, based on Plaintiff's brief alone, this Court cannot determine if a sentence six remand would be appropriate. Plaintiff did not inform this Court of sufficient details related to Plaintiff's alleged deteriorating health and whether the alleged new information is relevant to the determination of disability at the time of the alleged onset date, or prior to the Commissioner's final decision, or prior to his date last insured. For example, the Court does not know what date the alleged 80% VA disability rating became effective. Also, Plaintiff essentially does not argue that good cause exists or that the other factors are satisfied for a sentence six remand. Thus, the Court finds no basis for remand pursuant to sentence six.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.


May 23, 2016                               s/Jacquelyn D. Austin
Greenville, South Carolina                United States Magistrate Judge